1
2
3
4
5
6
7
8                    UNITED STATES  DISTRICT COURT

9                      Northern District of California

10                         San Francisco Division

11   DAVID OPPENHEIMER, et al.,                No. C 14-00499 LB

12                       Plaintiffs,            **ORDER GRANTING IN PART AND
                                                DENYING IN PART ALLVOICES'S**
           v.                                   **MOTION TO DISMISS PLAINTIFF'S**
13                                              **FIRST AMENDED COMPLAINT**
     ALLVOICES, INC.,
14                                              [Re: ECF No. 23]
                        Defendant.
15   _____/

16                            **INTRODUCTION**

17       David Oppenheimer and Performance Impressions, LLC sued Allvoices, Inc. ("Allvoices") in

18   relation to Allvoices's unlicensed use of Plaintiffs' photographs on Allvoices's website,

19   http://www.allvoices.com ("allvoices.com").  *See* First Amended Complaint ("FAC"), ECF No. 1.[1]

20   Allvoices moves to dismiss Plaintiffs' First Amended Complaint.  *See* Motion, ECF No. 23.

21   Pursuant to Civil Local Rule 7-1(b), the court found this matter suitable for determination without

22   oral argument and vacated the June 5, 2014 hearing.  5/30/2014 Clerk's Notice, ECF No. 27.  Upon

23   consideration of the First Amended Complaint, the briefs submitted, and the applicable legal

24   authority, the court **GRANTS IN PART** and **DENIES IN PART** Allvoices's motion.

25
26
27   _____

28       [1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-
     generated page number at the top of the document.

C 14-00499 LB
ORDER

UNITED STATES DISTRICT COURT
For the Northern District of California

**STATEMENT**

## I. THE PARTIES

David Oppenheimer is a professional photographer who is "in the business of creating photographic scenes of musicians while they perform." FAC ¶ 16. Performance Impressions, LLC is the company that he owns. *Id.* ¶ 14. Although both Mr. Oppenheimer and Performance Impressions, LLC are plaintiffs to this action, the First Amended Complaint conflates them both and identifies each as the alter ego for the other. *See id.* ¶ 14 ("DAVID OPPENHEIMER and PERFORMANCE IMPRESSIONS, LLC collectively referred to as 'Plaintiff.'"); *see also id.*, Ex. A, ECF No. 18-1 at 2 (on the certificate of registration for the work "2007 Concert Photography by David Oppenheimer of Performance Impressions," listing Mr. Oppenheimer as the author and claimant and listing Performance Impressions, LLC as the organization with rights and permissions). For purposes of this order, and as Allvoices did in its motion, the court will follow the convention used by Mr. Oppenheimer and Performance Impressions, LLC and refer to them both as the singular "Plaintiff."

Allvoices is an online service provider that is in the business of publishing audiovisual content and selling advertising space based on traffic on allvoices.com. *Id.* ¶ 2. It describes itself as a platform for "citizen journalism," saying that it "'is committed to delivering a community-driven platform for open, global news and idea exchange.'" *Id.* (quoting http://www.allvoices.com/about). Allvoices therefore "promotes contribution of graphical, written, audio and other content including images" to its website, which states that Allvoices has "'create[d] a place for the community to share and discuss news, by contributing related text, video and images and commenting—adding a voice.'" *Id.* (quoting http://www.allvoices.com/about).

Third-party citizen journalists who post news, videos, images, and commentary to allvoices.com ("Contributors") are "paid consideration" for their "article contributions." *Id.* ¶ 18. Because increased web traffic leads to increased advertising revenue, *id.* ¶ 19, Contributors are presently provided compensation in exchange for the popularity of, and web traffic to, their articles, *id.* ¶ 20. *See also id.* ¶ 53.

Allvoices classifies Contributors in its incentive program as independent contractors: "You are

an independent contractor, and nothing in this Supplemental Addendum is intended to, or should be construed to, create a partnership, agency, joint venture or employment relationship." *Id.* ¶ 51 (quoting All Voices incentive program, http://www.allvoices.com/incentive/terms (last visited April 11, 2014)).  Nevertheless, Plaintiff alleges that the relationship between Allvoices and its Contributors is that of employer/employee, or agent/principal, or other special relationship, which is demonstrated by Allvoices's offer of health care to its "best" contributors. *Id.* ¶ 52 (citing http://www.pmewswire.com/newsreleases/ allvoicescom-offers-health-care-for-valued-journalists-94857139.html (last visited Apr. 11, 2014)).

## II.  THE ALLEGED INFRINGEMENT OF PLAINTIFF'S WORKS

Plaintiff alleges that Allvoices "has reproduced and publicly displayed on [allvoices.com] multiple registered photographic works owned by Plaintiff without [Plaintiff's] permission." *Id.* ¶ 5. The infringement claims in this case arise from Allvoices's unlicensed use of twenty of Plaintiff's registered photographs of musicians Jeff Chimenti, Phil Lesh, and Bob Weir (the "Works"). *Id.* ¶¶ 29-48; *id.*, Exs. C-V, ECF No. 18-1 to 18-21.  The Works consist of photos taken at three separate music concerts. *Id.* ¶ 23.  Plaintiff registered the copyrights of the Works with the Register of Copyrights at the U.S. Copyrights Office as follows:

| Registration Number | Registration Date | Title |
| --- | --- | --- |
| VA 1-700-944 | January 1, 2010 | 2007 Concert Photography by David Oppenheimer of performance Impressions. |
| VA 1-778-968 | April 2, 2010 | Rothbury Festival Photos by David Oppenheimer. |
| VA 1-732-785 | August 30, 2010 | Bassnectar - Lorin Ashton - 2010 All Good Festival, et al. |

*Id.* ¶ 23.  At all relevant times, Plaintiff was, and continues to be, the sole owner of the Works. *Id.* ¶ 24.  The Works, which are displayed on Plaintiff's website (http://www.performanceimpressions.com), included prominently placed copyright management information as well as a copyright registration notice. *Id.* ¶¶ 22, 25.

In February 2011, Plaintiff learned that Allvoices published, or allowed to be published (through

Contributors), unlicensed copies of the Works on allvoices.com. *Id*. ¶¶ 26, 28. At that time, Allvoices had not "filed for a registered agent as a service provider a[t] the U.S. Copyright Office." *Id*. ¶ 27; *id*., Ex. B, ECF No. 18-2 at 2. Allvoices completed such registration on March 15, 2011. *Id*. It appears from screenshots of the allvoices.com webpages displaying the Works that the Works were uploaded to allvoices.com on or around January 7, 2011. *See id*., Exs. C-V, ECF No. 18-1 to 18-21.

On August 10, 2011, Plaintiff, through separate counsel, sent Allvoices a notice asking it to cease and desist the infringing activity and to preserve electronically-stored information. *Id*. ¶ 56; *id*., Ex. X, ECF No. 18-23. That notice included thumbnail images of each Work as well as hyperlinks to the Allvoice webpages on which the Works appeared. *Id*. ¶ 56; *id*., Ex. X, ECF No. 18-23. Plaintiff also demanded to settle the matter without costly litigation. *Id*. ¶ 56; *id*., Ex. X, ECF No. 18-23. Plaintiff alleges that it "believes" Allvoices "eventually removed access to the Works," but Allvoices failed to reply to Plaintiff's reasonable opportunities to resolve the actual infringement matter without costly litigation. *Id*. ¶ 57.

Plaintiff alleges that there are a number of "citizen journalists" who can be considered repeat infringers by reasonable standards but whose accounts Allvoices did not terminate. For example, user "JackWilson619195," who is believed to have infringed and uploaded over ten of Plaintiff's Works to allvoices.com and should have been terminated as a repeat infringer in 2011, but as of April 04, 2014, the account is still active. *Id*. ¶ 58.

## IV. PROCEDURAL HISTORY

On January 31, 2014, Plaintiff filed the original complaint in this court. Complaint, ECF No. 1. Allvoices moved to dismiss it, *see* First Motion, ECF No. 10, and in response, Plaintiff filed the operative First Amended Complaint, *see* FAC, ECF No. 18. Plaintiff brings the following claims: (1) direct copyright infringement; (2) contributory copyright infringement; (3) vicarious copyright infringement; and (4) "false designation of origin." *See id*. ¶¶ 21-89.

Allvoices now moves to dismiss Plaintiff's First Amended Complaint. Motion, ECF No. 23.

1  Plaintiff opposes the motion.  Opposition, ECF No. 24.[2]

2                                    **ANALYSIS**

3  **I.  LEGAL STANDARD**

4      A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does

5  not contain enough facts to state a claim to relief that is plausible on its face.  *See Bell Atlantic Corp.*

6  *v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads

7  factual content that allows the court to draw the reasonable inference that the defendant is liable for

8  the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "The plausibility standard

9  is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

10 defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 557.).  "While a complaint

11 attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

12 obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

13 conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual

14 allegations must be enough to raise a right to relief above the speculative level."  *Twombly,* 550 U.S.

15 at 555 (internal citations and parentheticals omitted).

16     In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true

17 and construe them in the light most favorable to the plaintiff.  *See id.* at 550; *Erickson v. Pardus*, 551

18 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

19     If the court dismisses the complaint, it should grant leave to amend even if no request to amend

20 is made "unless it determines that the pleading could not possibly be cured by the allegation of other

21 facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc.*

22 *v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).  But when a party

23 repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend.  *See*

24 *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where

25 district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim

26

27 _____

28      [2] Plaintiff filed a request for judicial notice along with his opposition brief.  *See* Request for
   Judicial Notice, ECF No. 24-4.  Because the court does not need to rely upon any of the documents
   Plaintiff submitted, the court denies Plaintiff's request.

1   with leave to amend).

2   **II. APPLICATION**

3      **A. Plaintiff's Copyright Claims Are Not Barred by the Statute of Limitations**

4      Allvoices first argues that Plaintiff's copyright claims are barred by the applicable statute of

5   limitations.  17 U.S.C. § 507 provides that "[n]o civil action shall be maintained under the

6   provisions of this title unless it is commenced within three years after the claim accrued."  Plaintiff

7   filed this action on January 31, 2014, so all claims that accrued prior to January 31, 2011 are time-

8   barred under the Copyright Act.

9      In the Ninth Circuit, a copyright claim accrues when a plaintiff knew or should have known that

10  infringement had occurred.  *Roley v. New World Pictures*, 19 F.3d 479, 481 (9th Cir. 1994) ("A

11  cause of action for copyright infringement accrues when one has knowledge of a violation or is

12  chargeable with such knowledge."); *see Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 706

13  (9th Cir. 2004) (statute of limitations begins when the copyright owner discovers, or reasonably

14  could have discovered, the infringement); *see also Piche v. Warner Bros., Inc.*, 265 Fed. Appx. 545,

15  546 (9th Cir. 2008).  Because each act of infringement is a distinct harm, the statute of limitations

16  bars infringement claims that accrued more than three years before suit was filed, but does not

17  preclude infringement claims that accrued within the statutory period.  *Roley*, 19 F.3d at 481.  In a

18  case of continuing infringement, "an action may be brought for all acts that accrued within the three

19  years preceding the filing of the suit."  *Kourtis v. Cameron*, 419 F.3d 989, 999 (9th Cir. 2005).

20  When a plaintiff knew or should have known that infringement had occurred is a question of fact,

21  *see Polar Bear Prods.*, 384 F.3d at 707; *see also In re Napster, Inc. Copyright Litig.*, No. C MDL-

22  00-1369-MHP, C, 2005 WL 289977, at *3 (N.D. Cal. Feb. 3, 2005), although a court may dismiss a

23  claim where no reasonable factfinder could conclude that a plaintiff's lack of knowledge of an

24  alleged infringement was reasonable under the circumstances, *see Goldberg v. Cameron*, 482 F.

25  Supp. 2d 1136, 1148 (N.D. Cal. 2007); *In re Napster, Inc. Copyright Litig.*, 2005 WL 289977, at *3.

26     In its motion, Allvoices misstates Ninth Circuit law when it contends that "under ordinary

27  circumstances, the statute of limitations for a copyright claim starts to run on the date the

28  infringement begins."  Motion, ECF No. 23 at 13 (citing *Los Angeles News Serv. v. Reuters*

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   *Television Int'l, Ltd.*, 149 F.3d 987, 992 (9th Cir. 1998)); *see James W. Ross, Inc. v. Cecil Allen*

2   *Const., Inc.*, No. 6:03CV792ORL28KRS, 2004 WL 1146104, at *2 n.2 (M.D. Fla. Apr. 26, 2004)

3   (noting that in *Los Angeles News Servs.* the Ninth Circuit was discussing the domestic (versus

4   extraterritorial) application of the Copyright Act rather than a straightforward statute-of-limitations

5   argument, may have misread *Roley*, and did not overturn *Roley*'s holding regarding the application

6   of the discovery rule in copyright actions).  It then argues that because the Works were uploaded to

7   allvoices.com on or around January 7, 2011, Plaintiff's claims began to accrue on that date and not

8   in February 2011 as Plaintiff argues.[3]

9          The court rejects Allvoices's argument.  *Roley* is clear that a copyright claim accrues when a

10   plaintiff knew or should have known that infringement had occurred, and subsequent Ninth Circuit

11   opinions apply this "discovery" rule.  Plaintiff alleges that it was not until February 2011 that he

12   discovered that Allvoices published or allowed to be published (through Contributors) unlicensed

13   copies of the Works on allvoices.com, and Allvoices does not argue that Plaintiff reasonably should

14   have known of the infringement before February 2011.  Instead, Allvoices makes the unpersuasive

15   argument that when Plaintiff discovered the infringing Works in February 2011, he should have seen

16   that the Works had been uploaded to allvoices.com on or around January 7, 2011 and in turn should

17   have realized that the three-year statute of limitations started to run back on January 7, 2011.  This

18   argument, of course, relies on the erroneous belief that the statute of limitations starts to run at the

19   time of infringement rather than at the time a plaintiff knew or should have known that infringement

20   had occurred.

21          In short, Plaintiff's copyright claims did not accrue until he discovered in February 2011 that the

22   infringing Works had been uploaded to allvoices.com.  Because he filed his original complaint on

23   January 31, 2014, his copyright claims are not barred by the applicable three-year statute of

24   limitations.

25

26   _____

27          [3] Allvoices also spends considerable time arguing that Plaintiff has not shown that the statute
of limitations should be equitable tolled, but because the court finds that Plaintiff's claim are not

28   time-barred without equitably tolling the statute of limitations, the court need not address this
argument.

UNITED STATES DISTRICT COURT
For the Northern District of California

**B.  The DMCA's Safe Harbor Does Not Apply**

Allvoices argues next that one of the four safe harbors found in the Digital Millennium Copyright Act ("DMCA") applies and prevents Plaintiff from recovering monetary relief.  Motion, ECF No. 23 at 16-19.  Allvoices specifically invokes the protection of 17 U.S.C. § 512(c)(1), which provides that

> A service provider shall not liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider, if the service provider–
>
> (A)
>
>     (i) does not have actual knowledge that the material or an activity using the material on the sustem or network is infringing;
>
>     (ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing acivity is apparent; or
>
>     (iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;
>
> (B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and
>
> (C) upon notification of claim infringement as described in paragraph (3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

Importantly, 17 U.S.C. § 512(c)(2) provides that

> The limitations on liability established in this subsection apply to a service provider <u>only if</u> the service provider has designated an agent to receive notifications of claimed infringement described in paragraph (3), by making available through its service, including on its website in a location accessible to the public, and by providing to the Copyright Office, substantially the following information:
>
> (A) the name, address, phone number, and electronic mail address of the agent.
>
> (B) other contact information which the Register of Copyrights may deem appropriate.
>
> The Register of Copyrights shall maintain a current directory of agents available to the public for inspection, including through the Internet, and may require payment of a fee by service providers to cover the costs of maintaining the directory.

(Emphasis added).

UNITED STATES DISTRICT COURT
For the Northern District of California

Even though the parties agree that the Works were uploaded to allvoices.com on or around January 7, 2011, that Plaintiff learned in February 2011 that Allvoices published or allowed to be published (through Contributors) unlicensed copies of the Works on allvoices.com, and that Allvoices had not designated a DMCA-related agent with the Copyright Office until March 15, 2011, Allvoices argues that "[o]nce Allvoices filed its paperwork in March 2011, it enjoyed the protection of the DMCA with respect to all infringements, not just infringements occurring after that date." Motion, ECF No. 23 at 16.  Allvoices cites no authority directly supporting this argument; instead, it simply says that "[t]he DMCA does not carve out or preserve liability for infringement that began before the DMCA safe harbors went into effect" and that "[h]ad Congress wanted to limit DMCA immunity in this fashion, it certainly could have done so."  *Id.*

The court is not persuaded.  Section 512(c)(2) "plainly specifies that a registered agent is a predicate, express condition" that must be met and that "the safe harbor will apply 'only if' such agent has been designated and identified to the Copyright Office for inclusion in the directory of agents."  *Perfect 10, Inc. v. Yandex N.V.*, No. C 12-01521 WHA, 2013 WL 1899851, at *8 (N.D. Cal. May 7, 2013).  And at least one court has found (in a case in which Allvoices was a defendant and represented by the same counsel representing it here) that the subsequent designation of a DMCA-related agent does not protect a service provider from infringing activity that occurred before the designation.  *Nat'l Photo Group, LLC v. Allvoices, Inc.*, No.: C-13-03627 JSC, 2014 WL 280391, at *4 (N.D. Cal. Jan. 24, 2014) ("Plaintiff's claims predate Defendant's DMCA protection since Defendant's allegedly infringing activity began a number of weeks or months prior to Defendant's DMCA registration"); *see also Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, No. C 07-03952 JW, 2010 WL 5598337, at *7 (N.D. Cal. Mar. 19, 2010) ("At a minimum, Defendants would not be able to claim the protection of the safe harbor provisions prior to designating an agent.").  This court also agrees that Allvoices may not invoke the safe harbor found in Section 512(c)(1) with respect to infringing conduct that occurred prior to Allvoices designating a DMCA-related agent with the Copyright Office.[4]

_____

[4] Because the court finds that Section 512(c)(1) does not apply here, and because Allvoices does not invoke the protections of any of the three other DMCA safe harbors, *see* 17 U.S.C. §

The court notes, however, that it remains unresolved whether Allvoices's potential liability in this case is limited to the time between when the Works were posted on allvoices.com and March 15, 2011, the date Allvoices designated a DMCA-related agent with the Copyright Office. *See Nat'l Photo Group*, 2014 WL 280391, at *4 (noting the same). The parties did not present this issue to the court and so the court does not address it.

**C. Plaintiff's Individual Claims**

Plaintiff brings claims for: (1) direct copyright infringement; (2) contributory copyright infringement; (3) vicarious copyright infringement; and (4) "false designation of origin." Allvoices argues that none of them is sufficiently alleged. The court addresses each of Plaintiff's claims in turn below.

**1. Plaintiff Sufficiently Alleges a Claim for Direct Copyright Infringement**

Plaintiff's first claim is for direct copyright infringement. A plaintiff "must satisfy two requirements to present a prima facie case of direct infringement: (1) [he or she] must show ownership of the allegedly infringed material and (2) [he or she] must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159 (9th Cir. 2007) (citing *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001)); *see* 17 U.S.C. § 501(a). Under Section 106, a copyright holder has the exclusive rights to reproduce, distribute, publicly display, perform, and create derivative works of the copyrighted work. Direct copyright infringement does not require intent or any particular state of mind. *Fox Broad. Co, Inc. v. Dish Network, LLC*, 905 F. Supp. 2d 1088, 1098-99 (C.D. Cal. 2012); *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1367 (N.D. Cal. 1995).

Allvoices does not dispute Plaintiff's allegation that he owns the Works. Instead, citing *Netcom*,

---

512(a), (b), (d), the court does not need to address at this time whether Allvoices meets the requirements of Section 512(i), which sets forth the threshold requirements that must be met before any of the safe harbors in Section 512 apply. *See* Motion, ECF No. 23 at 17-19 (arguing that Allvoices met the threshold requirement that it have adopted and reasonably implemented a policy that provides for the termination of repeat infringers); Opposition, ECF No. 24 at 12-13 (arguing that Allvoices did not meet this threshold requirement); *see also* 17 U.S.C. § 512(i)(1)(A).

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Allvoices contends that, in addition to the two above-listed requirements, a plaintiff also must show

2   that the defendant engaged in volitional conduct that caused the infringement.  *See* 907 F. Supp. at

3   1370 (finding that Netcom was not liable for direct infringement of the copyrighted works and

4   reasoning that direct copyright infringement requires "some element of volition or causation which

5   is lacking where a defendant's system is merely used to create a copy by a third party").  Although

6   the *Netcom* requirement of "volitional" conduct for direct liability has been adopted by the Second

7   and Fourth Circuits, *see Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2nd

8   Cir. 2008); *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 551 (4th Cir. 2004), the Ninth Circuit

9   has not yet addressed the issue, and courts within this Circuit are split on it, *compare*, *e.g.*, *Perfect*

10  *10, Inc. v. Giganews, Inc.*, No. CV11-07098 AHM (Shx), 2013 WL 2109963, at *7 (C.D. Cal.

11  2013); *Fox Broad.*, 905 F. Supp. 2d at 1099-1102; *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1115

12  (D. Nev. 2006); *Sega Enterprises, Ltd. v. MAPHIA*, 948 F. Supp. 923, 931 (N.D. Cal. 1996), *with*,

13  *e.g.*, *Arista Records LLC v. Myxer Inc.*, No. CV 08–03935 GAF (Jcx), 2011 WL 11660773, at *13-

14  14 (C.D. Cal. Apr. 1, 2011); *Warner Bros. Entm't Inc. v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003, 1011

15  n.7 (C.D. Cal. Aug. 1, 2011).

16      But even if a direct copyright infringement claim requires a plaintiff to allege that the defendant

17  engaged in "volitional" conduct that caused the infringement[5], the court finds that Plaintiff has done

18  so.  Despite Allvoices's suggestion, Plaintiff does not allege that the Contributors infringed the

19  Works on their own by uploading the Works onto allvoices.com.  Instead, Plaintiff alleges

20  throughout the First Amended Complaint that Allvoices, both directly and through the Contributors,

21  reproduced and displayed the Works without Plaintiff's permission, *see* FAC ¶¶ 5, 50, 59, and

22  screenshots of allvoices.com webpages show that the Works were uploaded to Allvoices's website,

23  allvoices.com, *see id.*, Exs. C-V, ECF No. 18-1 to 18-21.  These allegations sufficiently show that

24  Plaintiff has alleged a plausible claim against Allvoices for direct copyright infringement.

25  Allvoices's argument that it was the Contributors (and not Allvoices) who infringed the Works and

26

27  _____

28      [5] The parties agree in their briefs that there is such a requirement, *see* Motion, ECF No. 23 at
    20; Opposition, ECF No. 24 at 15; Reply, ECF No. 25 at 12, but the parties' agreement does not
    make it the law.  For now, the court does not reach whether this requirement exists.

uploaded them to allvoices.com is a theory that is not found in the First Amended Complaint, even if Plaintiff does allege that Allvoices describes itself as a platform for citizen journalism, that it provides its Contributors with tools to "cull and access" copyrighted images, and that its Contributors may have found the Works on Plaintiff's website. *See* FAC ¶¶ 2, 49, 66. If Allvoices's turns out to be correct, it may make this argument again on summary judgment. *See Nat'l Photo Group*, 2014 WL 280391, at \*5-6 (refusing to grant Allvoices's motion to dismiss where the plaintiff alleged that Allvoices directly infringed the copyrighted works). For now, though, the court finds that Plaintiff's first claim for direct copyright infringement survives.[6]

### 2. Plaintiff Sufficiently Alleges a Claim for Contributory Copyright Infringement

Plaintiff's second claim is for contributory copyright infringement. "[A] defendant is a contributory infringer if it (1) has knowledge of a third party's infringing activity, and (2) induces, causes, or materially contributes to the infringing conduct." *Perfect 10 v. Visa Int'l Serv. Assoc.*, 494 F.3d 788, 795 (9th Cir. 2007) (citing *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004)). In the internet context, " a computer system operator can be held contributorily liable if it has *actual* knowledge that *specific* infringing material is available using its system, and can take simple measures to prevent further damage to copyrighted words, yet continues to provide access to infringing works." *Perfect 10, Inc. v. Amazon, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) (emphasis in original) (internal citations omitted). A plaintiff's "generalized knowledge . . . of the possibility of infringement" does not suffice. *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013). Finally, a defendant is not a contributory infringer in the absence of direct infringement by a third party. *Amazon, Inc.*, 508 F.3d at 1169.

Allvoices argues that Plaintiff's allegation that it is "liable as a contributory infringer to Plaintiff because it had actual and/or constructive knowledge of another's infringing conduct and included, caused, or materially contributed to that conduct," FAC ¶ 63, is simply a "threadbare recital" of the claim's elements, and that Plaintiff's other allegations do not sufficiently show that it had actual

---

[6] Because the court finds that Plaintiff has sufficiently alleged that Allvoices directly infringed the Works, the court does not need to address Allvoices's argument, which Allvoices makes for the first time in its reply brief, that Plaintiff's claim is "an attempt to allege a disguised and defective secondary inducement-of-infringement claim." *See* Reply, ECF No. 25 at 14-15.

1  knowledge that the Works were being infringed or that it continued to provide access to them once it

2  did.

3      It is true that Plaintiff's allegations in Paragraph 63 of the First Amended Complaint simply state

4  the required elements, but this is not all that Plaintiff alleges in support of his claim.  As for

5  Allvoices's knowledge that the Works were being infringed, Plaintiff alleges that the Works

6  included prominently placed copyright management information as well as a copyright registration

7  notice, so it was clear that the Works were copyrighted.  Plaintiff also alleges that on August 10,

8  2011, Plaintiff, through separate counsel, sent Allvoices a notice asking it to cease and desist the

9  infringing activity and to preserve electronically stored information, and that notice included

10  thumbnail images of each Work as well as hyperlinks to the Allvoices webpages on which the

11  Works appeared.[7]

12      As for Allvoices's continuing to provide access to the Works despite its ability to take simple

13  measures to prevent such access, Allvoices says that Plaintiff, in Paragraph 57 of the First Amended

14  Complaint, "concedes no continuing access to the infringing Works; access was promptly removed."

15  Motion, ECF No. 23 at 22.  But what Plaintiff actually alleges in Paragraph 57 is that "it is believed

16  by Plaintiff that [Allvoices] eventually removed access to the Works."  Plaintiff does not allege that

17  Allvoices "promptly" removed access to the Works.  In its reply, Allvoices also says that it removed

18  access to the Works within one day of receiving notice, but the email it cites is dated February 5,

19  2011—roughly six months before Plaintiff's attorney sent the August 10, 2011 notice to Allvoices.

20  *See* FAC, Ex. Y, ECF No. 18-24.  In other words, this email is not evidence that Allvoices

21

22      _____

23      [7] Allvoices argues that Plaintiff cannot use his August 10, 2011 notice to support his claim
here because the notice states that it is "For Settlement Purposes Only, Subject to F.R.E. 408."

24  Federal Rule of Evidence 408 provides that evidence of "furnishing, promising, or offering — or
accepting, promising to accept, or offering to accept — a valuable consideration in compromising or

25  attempting to compromise the claim," or of "conduct or a statement made during compromise
negotiations about the claim — except when offered in a criminal case and when the negotiations

26  related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement
authority," is "not admissible — on behalf of any party — either to prove or disprove the validity or

27  amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."
Plaintiff is not using the notice for any of these prohibited purposes, though.  Plaintiff instead is

28  using the notice to establish that Allvoices received notice that the Works were being infringed.

C 14-00499 LB
ORDER

13

UNITED STATES DISTRICT COURT
For the Northern District of California

1    "promptly" removed access to the Works in response to the August 10, 2011 notice on which

2    Plaintiff relies.  Finally, Plaintiff alleges that Allvoices has the ability to disable access between

3    Allvoices's system and other websites that may contain copyrighted material.

4        Based on these allegations, the court finds that Plaintiff has alleged sufficient facts to support a

5    plausible claim for contributory copyright infringement and that Plaintiff's second claim survives.[8]

6                **3.  Plaintiff Sufficiently Alleges a Claim for Vicarious Copyright Infringement**

7        Plaintiff's third claim is for vicarious copyright infringement.  "To state a claim for vicarious

8    copyright infringement, a plaintiff must allege that the defendant has (1) the right and ability to

9    supervise the infringing conduct, and (2) a direct financial interest in the infringing activity."  *Visa*

10   *Int'l Serv. Ass'n*, 494 F.3d at 802.  As for the first element, "a defendant exercises control over a

11   direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well

12   as the practical ability to do so."  *Amazon.com, Inc.*, 508 F.3d at 1173.  And as for the second

13   element, "[t]he essential aspect of the 'direct financial benefit' inquiry is whether there is a causal

14   relationship between the infringing activity and any financial benefit a defendant reaps, regardless of

15   *how substantial* the benefit is in proportion to a defendant's overall profits."  *Ellison*, 357 F.3d at

16   1079 (emphasis in original).  The Ninth Circuit has held that "[f]inancial benefit exists where the

17   availability of infringing material 'acts as a "draw" for customers,'" *A&M Records v. Napster, Inc.*,

18   239 F.3d 1004, 1023 (9th Cir. 2001) (quoting *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259,

19   263-64 (9th Cir. 1996)), and "[t]here is no requirement that the draw be 'substantial,'" *Ellison*, 357

20   F.3d at 1079.

21       Allvoices argues that Plaintiff's claim fails for several reasons.  Allvoices first argues that

22   Plaintiff has no claim because Allvoices promptly removed the Works after it received the August

23   10, 2011 notice.  Motion, ECF No. 23 at 23 (citing *Shell v. Henderson*, No.

24   09–cv–00309–MSK–KMT, 2013 WL 2394935, at *15 (D. Colo. May 31, 2013) (dismissing the

25   _____

26       [8]  Because the court finds that Plaintiff has sufficiently alleged that Allvoices contributorily
     infringed the Works, the court does not need to address Allvoices's argument, which Allvoices
27   makes for the first time in its reply brief, that Plaintiff has "attempted to pass off its unpled
     inducement-of-copyright claim" as one for contributory copyright infringement.  *See* Reply, ECF
28   No. 25 at 16.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

plaintiff's vicarious copyright infringement claim because 17 U.S.C. § 512(c)(1)(A)(iii) "strongly suggests that, so long as [a defendant] complied with [a plaintiff's] requests that infringing material posted by third parties be removed, he cannot be held liable for vicarious infringement")).  This argument is unpersuasive.  For one, as explained above, Allvoices misstates Plaintiff's allegation: Plaintiff alleges that "it is believed by Plaintiff that [Allvoices] eventually removed access to the Works."  Plaintiff does not allege that Allvoices "promptly" removed access to the Works.  Allvoices's citation to *Shell* also is unavailing.  There, the court explicitly acknowledged that "[i]t is not entirely clear whether a party's compliance with a copyright holder's request to remove infringing material is sufficient to defeat a claim of vicarious infringement" and noted that its "own research produced no cases in which courts have addressed" the issue.  *Shell*, 2013 WL 2394935, at *15.  Nevertheless, the court found that language from the safe harbor under 17 U.S.C. § 512(c) that "suggests" that this is a basis for dismissal.  *Id.*  Here, the court already has rejected Allvoices's argument that this safe harbor applies; therefore its language has no bearing in this situation.

Allvoices then argues that Plaintiff does not sufficiently allege that Allvoices had the right and ability to supervise the infringing conduct.  Specifically, Allvoices says that Plaintiffs do not allege that Allvoices "controlled which articles its Contributors posted on" allvoices.com, that it "supplied the infringing images to the third-party [C]ontributors who posted the Work[s]," or it "directed [the Contributors] to post infringing pictures."  Motion, ECF No. 23 at 25.  True enough, but Allvoices does not cite any authority holding that Plaintiff has to make those specific allegations.  Instead, Plaintiff only has to allege facts to plausibly showing that Allvoices had the right and ability to supervise the infringing conduct, and Plaintiff does that.  Plaintiff alleges that Allvoices "had the right and ability to supervise and/or control the infringing conduct of its Contributors because it maintains the right and ability to screen and promote submitted articles selected by company editors or screeners as well as [having] final editorial decision making as to what content is posted to the front page of its website."  FAC ¶ 78.  Plaintiff also alleges that Allvoices "maintains or maintained internal software to screen submitted content for copyright infringement."  *Id.* ¶ 79 (citing Tony Rogers, An Interview with Allvoices Founder Amra Tareen, About.com, http://journalism.about.com/od/citizenjournalism/a/allvoicesqa_2.htm (last visited Apr. 11, 2014)).

1   This is sufficient at this stage in the proceedings.  While Allvoices contends that Allvoices is an

2   unmediated website, this does not conclusively refute Plaintiff's allegations and in any case is a

3   factual issue that is appropriate for consideration on summary judgment, not a motion to dismiss.

4       Allvoices also argues that Plaintiff does not sufficiently allege that it has a direct financial

5   interest in the infringing activity.  In the First Amended Complaint, Plaintiff alleges that Allvoices

6   derives a direct financial benefit from the infringed Works because Allvoices displays

7   advertisements on allvoices.com and charges fees for displaying them.  FAC ¶ 73.  Plaintiff also

8   alleges that those fees are directly related to the website's traffic, and the traffic depends upon

9   Allvoices "having content [that is] 'accompanied by videos, images, perspective, comments

10  (discussion), and related news stories.'"  *Id.* (quoting Allvoices Help, Contributing,

11  http://www.allvoices.com/help/contributing (last visited Apr. 11, 2014)); *see also id.* ¶ 74 ("It is

12  Plaintiff's belief and understanding that the availability of relevant or interesting visual content

13  attracts readers to allvoices.com and in turn the site because more important to existing and potential

14  advertisers by increasing [Allvoices's] overall traffic.").  Plaintiff further alleges that Allvoices "can

15  determine to a relatively specific degree how much traffic is generated specifically by a Contributor"

16  and "measure how much traffic has accessed specific content including infringing materials."  *Id.* ¶

17  75.  Finally, Plaintiff alleges that Allvoices "also received a direct financial benefit related to the

18  infringing activity by directly avoiding the payment of a license to Plaintiff or others for use of the

19  Works."  *Id.* ¶ 77.

20      Allvoices says that rather than directly linking Allvoices's advertising revenue to the

21  infringement of the Works, Plaintiff alleges that Allvoices "benefits generically from Contributor

22  posts."  Motion, ECF No. 23 at 23-24.  Allvoices may be correct but it not clear that Plaintiff's

23  increased-traffic-means-more-advertising-revenue argument fails as a matter of law.  Indeed, the

24  court is not convinced that any of the three opinions Allvoices cites establishes a rule that

25  advertising revenue cannot be used to demonstrate a causal relationship between the infringing

26  activity and a financial benefit to a defendant, *see Sarvis v. Polyvore, Inc.*, 2013 WL 4056208, at

27  *9–10 (D.Ma. Aug. 9, 2013) (concluding that the pro se plaintiff's assertions made in his opposition

28  to a motion to dismiss—namely, that the defendant's financial interest is demonstrated by "adverting

1   [sic] on the contest page, from fees it charges its advertising underwriter (e.g. Samsung), and

2   because its contest are User base draws"—do not constitute a plausible claim that defendant

3   benefitted financially from the infringement); *Perfect 10, Inc. v. Google, Inc.*, 2010 WL 9479060, at

4   *9 (C.D. Cal. July 30, 2010) (concluding that the plaintiff failed to provide evidence showing ads

5   next to infringing works, and stating that even if the plaintiff produced such evidence, "it is unclear

6   that such evidence would qualify as the direct financial benefit necessary to impose vicarious

7   liability"); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 500 (E.D. Pa. 2006) (finding as "vague" and

8   "conclusory" the plaintiff's allegation that "Google's advertising revenue is directly related to the

9   number of Google users and that the number of users is dependent directly on Google's facilitation

10  of and participation in the alleged infringement" (internal quotation marks omitted)), and other

11  courts have gone the other way, *see Nat'l Photo Group*, 2014 WL 280391, at *8 (finding that none

12  of these opinions establish such a rule, and explicitly not dismissing the plaintiff's vicarious

13  copyright infringement claim on the basis that the complaint failed to adequately allege a direct

14  financial benefit); *Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 857 (C.D. Cal. Feb. 17, 2006)

15  (finding that "Google clearly [directly] benefits financially from third parties' displays of [the

16  plaintiff's] photos" when "users visit AdSense partners' websites that contain . . . infringing photos"

17  because if Google "serves advertisements" on those websites "it will share in the ad revenue").[9]

18  Even so, the court believes that Plaintiff's allegation that Allvoices's avoidance of the licensing fees

19  for the Works also supports a finding that Allvoices directly benefitted from the infringement of the

20  Works, and Allvoices does not address this allegation in its motion.  Thus, the court finds at this

21  stage in the proceedings that Plaintiff has sufficiently alleged that Allvoices has a direct financial

22  interest in the infringing activity.

23      Finally, Allvoices argues that there is "no suggestion of 'pervasive participation' in the

---

25      [9] Allvoices suggests that *Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 857 (C.D. Cal. Feb.

26  17, 2006), should not be relied upon because the Ninth Circuit later reversed the district court's ruling with respect to the plaintiff's vicarious copyright infringement claim, but this is not

27  persuasive because the Ninth Circuit's discussion of the plaintiff's claim focused entirely on other grounds and explicitly stated that it need not reach the plaintiff's argument that Google received a

28  direct financial benefit.  *See Amazon.com, Inc.*, 508 F.3d at 1175 n.15.  Thus, there is no reason that the district court's reasoning with respect to Google's direct financial benefit should be disregarded.

infringing activities, as required by *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263-64 (9th Cir. 1996)." Motion, ECF No. 23 at 25. *Fonovisa*, however, does not say that pervasive participation is required. In *Fonovisa*, the Ninth Circuit mentioned this phrase only when it recounted that a prior Second Circuit opinion found that a plaintiff's vicarious liability claim was viable where the defendants engaged in pervasive participation in the formation and direction of direct infringers. *Id.* at 263 (quoting *Gershwin Publishing Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 113 (2d Cir. 1971)). The Ninth Circuit also found that the plaintiff in *Fonovisa* has sufficiently alleged that the defendant exercised a similar level of control over the direct infringers, but at no point did the Ninth Circuit say that a plaintiff must show that a defendant engaged in pervasive participation in the infringement. *Id.* Subsequent Ninth Circuit opinions setting forth the elements of a vicarious copyright infringement claim also make no mention of such a requirement. The court therefore rejects Allvoices's argument that there is. *See Flava Works, Inc. v. Gunter*, No. 10 C 6517, 2011 WL 1791557, at *5 (N.D. Ill. May 10, 2011) (rejecting the defendants' contention that under *Fonovisa* a plaintiff must allege "pervasive participation" in the infringing activity, in part because in *Fonovisa* "pervasive participation" was found only to be sufficient to satisfy the control element).

Accordingly, the court finds that Plaintiff has alleged sufficient facts to support a plausible claim for vicarious copyright infringement and that Plaintiff's third claim survives.

### 4. Plaintiff Does Not Sufficiently Allege a Lanham Act Claim

Plaintiff's fourth claim ostensibly is for "false designation of origin." "The Lanham Act was intended to make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in . . . commerce against unfair competition.'" *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003) (quoting 15 U.S.C. § 1127). "To this end, section 43(a) of the Act, 15 U.S.C. § 1125(a), proscribes 'the use of false designations of origin, false descriptions, and false representations in the advertizing and sale of goods and services.'" *Sleep Science Partners v. Lieberman*, No. 09–04200 CW, 2010 WL 1881770, at *2 (N.D. Cal. May 10, 2010) (quoting *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1036 (9th Cir.2005)). Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1) states in pertinent part:

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

As is clear from the above, Section 43(a)(1) has two prongs: subsection (A) covers trademark infringement and false designation of origin claims, while subjection (B) covers false advertising claims. *See Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 990-91 (9th Cir. 2008) (stating that the first prong of Section 43(a)(1)(A) "concerns false designation of origin" and referring to Section 43(a)(1)(B) as "the false advertising prong"); *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902-04 (9th Cir. 2007) (distinguishing between these two prongs of Section 43(a)(1) of the Lanham Act).

To establish a claim for trademark infringement or false designation of origin under Section 43(a)(1)(A), 15 U.S.C. § 1125(a)(1)(A), a plaintiff must prove that the defendant (1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question. *See Freecycle*, 505 F.3d at 902; *see also Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir.1980) (claims under Section 43(a)(1)(A) of the Lanham Act for trademark infringement, false designation of origin, or unfair competition may be proven by the same elements, as common law unfair competition and the federal prohibitions on trademark infringement and false designation of origin each "preclude the use of another's trademark in a manner likely to confuse the public about the origin of goods") (citing *New West Corp. v. NYM Co. of California Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979) ("Whether we call the violation [under Section 43(a)(1)(A)] infringement, unfair competition or false designation of origin, the test is identical[:] [I]s there a 'likelihood of

1    confusion?'")).

2         And to establish a claim for false advertising claim under Section 43(a)(1)(B), 15 U.S.C. §

3    1125(a)(1)(B), a plaintiff must show: (1) a false statement of fact by the defendant in a commercial

4    advertisement about its own or another's product; (2) the statement actually deceived or has the

5    tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is

6    likely to influence the purchasing decision; (4) the defendant caused its false statement to enter

7    interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false

8    statement, either by direct diversion of sales from itself to defendant or by a lessening of the

9    goodwill associated with its products. *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110

10   (9th Cir. 2012) (citing 15 U.S.C. § 1125(a)(1)(B) and *Southland Sod Farms v. Stover Seed Co.*, 108

11   F.3d 1134, 1139 (9th Cir. 1997)).

12        Here, as Allvoices points out, it is not clear whether Plaintiff brings a claim for false designation

13   of origin under Section 43(a)(1)(A) or for false advertising under Section 43(a)(1)(B). Despite

14   Plaintiff's titling his claim as one for false designation of origin, his allegations seem to suggest

15   claims under both subsections. For instance, Plaintiff alleges that "[i]n connection with

16   [Allvoices's] advertisement, promotion, and distribution of their services" (suggesting a false

17   advertising claim), "[Allvoices] has affixed, applied, and used false designation of original and false

18   and misleading descriptions and representations, including Plaintiff's mark, which tends to falsely

19   describe the origin, sponsorship, association, or approval by Plaintiff of the services offered by

20   [Allvoices]" (suggesting a false designation of origin claim). FAC ¶ 84. In addition, in his

21   opposition, Plaintiff argues that he states a claim for false designation of origin because he has

22   sufficiently alleged the requirements of Section 43(a)(1)(B) (the false advertising prong).

23   Opposition, ECF No. 24 at 23-24. Plaintiff also argues that he does not need to demonstrate a

24   likelihood of confusion (a requirement for a false designation of origin claim under Section

25   43(a)(1)(A)) because none of required under Section 43(a)(1)(B). *Id.* at 24. In short, the court

26   cannot tell whether Plaintiff has sufficiently alleged his claim because the court is not sure which

27   claim Plaintiff brings. For this reason, Plaintiff's claim is **DISMISSED WITHOUT**

28

UNITED STATES DISTRICT COURT
For the Northern District of California

C 14-00499 LB
ORDER

20

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    **PREJUDICE**.[10]

2    **CONCLUSION**

3        Based on the foregoing, the court **GRANTS IN PART** and **DENIES IN PART** Allvoices's

4    motion.  Plaintiff's claims for direct copyright infringement, contributory copyright infringement,

5    and vicarious copyright infringement survive, but his claim under Section 43(a)(1) of the Lanham

6    Act is **DISMISSED WITHOUT PREJUDICE**.  Plaintiff may file a Second Amended Complaint

7    by July 1, 2014.

8        This disposes of ECF No. 23.

9        **IT IS SO ORDERED.**

10   Dated: June 10, 2014

11                                                       _____

12                                                       LAUREL BEELER
                                                      United States Magistrate Judge

---

20         [10] Allvoices also argues that Plaintiff's Lanham Act claim is precluded by the Supreme

21   Court's holding in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).  See
Motion, ECF No. 23 at 28.  In that opinion, the Supreme Court held that Twentieth Century Fox

22   could not bring a false designation of origin claim under Section 43(a)(1)(A) where the defendant,
Dastar, had repackaged and sold as its own a Fox television series which had entered the public

23   domain after its copyright lapsed.  *Id.* at 27-28, 37-38. The Court held that "origin of goods" in the
Section 43(a)(1)(A) did not refer to the author of any idea, concept, or communication embodied in a

24   good, but instead referred to the producer of the tangible good itself.  *Id.* at 37.  To hold otherwise
would provide authors of creative works with perpetual protection under the Lanham Act that they

25   did not have under the Copyright Act.  *Id.*  But as the Ninth Circuit has made clear, the Supreme

26   Court's holding was limited to false designation of origin claims under Section 43(a)(1)(A).  *See*
*Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 990-91 (9th Cir. 2008).  Because it is not clear

27   whether Plaintiff brings a claim for false designation of origin under Section 43(a)(1)(A) or for false

28   advertising under Section 43(a)(1)(B), the court does not reach at this time whether *Dastar* applies
here.